**IN THE UNITED STATES DISTRICT COURT**
FOR THE EASTERN DISTRICT OF TEXAS
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **JASON J. HERNANDEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 9:17-CV-00023** |
| | § | |
| **GREG ABBOTT, *et al.*,** | § | |
| **Defendants.** | § | |

**DEFENDANTS BRYAN COLLIER, TODD HARRIS AND
ROBERT GRANT'S MOTION TO DISMISS PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE  12(b)(1) AND (6)**

Defendants Bryan Collier, Todd Harris, and Robert Grant ("Defendants") file

this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6)

and respectfully offer the following:

**I.**
**STATEMENT OF THE CASE**

Plaintiff Jason Hernandez, TDCJ No. 1655115, is currently incarcerated at the

Polunsky Unit by the Texas Department of Criminal Justice ("TDCJ"). *See* ECF No.

39-2 at 2.  His confinement in administrative segregation is a result of gang validation

and he has been continuously offered a way of out administrative segregation by

participation in TDCJ's Gang Renouncement and Disassociation Process (GRAD). *See*

*id*. at 4–6.

Hernandez is seeking injunctive relief and a declaratory judgment that the

length and conditions of his confinement in administrative segregation at the

Polunsky Unit violate the Eighth and Fourteenth Amendments of the United States

Constitution pursuant to 42 U.S.C. §1983. *See* ECF No. 1 at ¶¶ 11, 12, 22-24. He is also seeking compensatory damages and punitive damages.

## II.
## STANDARDS OF REVIEW

### A.   Standard for Dismissal Under 12(b)(1)

A party may move for dismissal of a cause of action when a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU* Power, 536 F.3d 469, 473 (5th Cir. 2008) (*quoting Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  When a motion to dismiss under Rule 12(b)(1) is filed, "the party asserting jurisdiction bears the burden of proof …" *Morrison v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014).

### B.   Standard for dismissal under 12(b)(6)

A party is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted.  Under Fed. R. Civ. P. 12(b)(6), all well-pleaded facts are viewed in the light most favorable to the plaintiff, but the plaintiff must allege facts that support the elements of the cause of action to set forth a valid claim. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010).

When presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The district court must accept all the complaint's well-

pleaded facts as true, but may disregard any legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).   Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 679.   In other words, a complaint must do more than allege the plaintiff's entitlement to relief.   A complaint must "show" such an entitlement with its facts.

As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*.   This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.   After *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 663.   To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.   The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *Id*. at 678-79.   Because Hernandez has failed to show he has any plausible claim for relief, Defendants respectfully ask that their motion to dismiss as to all claims be granted.

## III.
## BRIEF IN SUPPORT OF MOTION TO DISMISS

In addition to compensatory and punitive damages, Hernandez seeks declaratory and injunctive relief. ECF No. 39-2 2 at 21–22.  The Supreme Court has only recognized exceptions against state officials for prospective relief to prevent a continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985).

In *Ex parte Young*, the Supreme Court set forth a narrow exception to Eleventh Amendment immunity allowing prospective injunctive relief through official capacity actions. *Ex parte Young*, 209 U.S. 123, 159-60 (1908).  To determine whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (internal citations omitted).  Not only does Hernandez fail to enunciate any set of facts that illustrate Defendants are personally involved in his conditions of confinement, he also fails to allege a violation of any federal law by Defendants that would overcome Defendants' entitlement to Eleventh Amendment immunity.  Hernandez's allegations against all Defendants have no basis in law or fact, and therefore should be dismissed with prejudice.

**A. Hernandez's injunctive and declaratory claims against Defendants Harris and Grant fail for lack of redressability.**

Both former Warden Todd Harris and former Security Threat Group Program Supervisor Robert Grant have left their respective positions within TDCJ.[1] Therefore, both these defendants lack the authority to change or make exceptions to TDCJ's administrative segregation policy.  Defendants Harris and Grant's authority in their official capacities is limited to the authorities and responsibilities of their former respective positions within TDCJ. *Id.*; *see also Volk v. Gonzales*, 207 F.3d 657, 2000 WL 122381, at *1 (5th Cir. 2000) (unpublished) (recognizing that the wardens named as defendants lacked authority to grant the requested injunctive relief). Hernandez does not allege or explain how these Defendants—in their former roles within TDCJ—would have the authority to redress Hernandez's claims for prospective relief.  Essentially, these are not the Defendants who can effectuate Hernandez's request for prospective injunctive relief. *Okpalobi v. Foster*, 244 F.3d 405, 425–27 (5th Cir. 2001).  Hernandez's claims for injunctive relief against Defendants Harris and Grant in each's official capacity should be dismissed for lack of Article III standing.

**B. Plaintiff alleges no personal involvement by Defendants Harris, Grant, and Collier.**

To hold someone liable under 42 U.S.C. § 1983, an inmate must show that the defendant was personally involved in the alleged constitutional violation.

---

[1]  Defendants respectfully ask that the Court take judicial notice of these facts pursuant to Fed. R. Evidence 201 as they are facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  https://www.tdcj.texas.gov/unit_directory/tl.html (last visited on June 10, 2019); https://www.tdcj.texas.gov/connections/-pdfs/20181100_retirees.pdf

Personal involvement in an alleged constitutional deprivation is an essential element to a civil rights cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).  In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate each defendant's participation in the alleged wrongdoing. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

Under § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory.  A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). To be held liable for a policy, a supervisor who is not personally involved, nor has no causal connection to the constitutional violation, must implement a policy which is "so *deficient* that the policy itself is a *repudiation* of constitutional rights and is the *moving force* of the constitutional violation." *Id.* at 304 (emphasis added).

Alleged failures that are based on conclusory allegations do not meet the necessary threshold for a § 1983 violation. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("A § 1983 plaintiff must plead specific facts with sufficient particularity to meet all the elements of recovery.").  Hernandez fails to allege any personal involvement or causal connection by Defendants with respect to TDCJ's administrative segregation policies and procedures at the Polunsky Unit.  He only claims that the Defendants should be liable by virtue of their titles.  However,

Defendants' supervisory roles do not amount to a constitutional violation; therefore, all claims against Defendants should be dismissed.

**C. Hernandez has no plausible Fourteenth Amendment claim.**

    **1. Hernandez has no due process interest in his custodial classification.**

Hernandez alleges that his continued confinement in administrative segregation due to gang validation violates his right to due process under the Fourteenth Amendment. *See* ECF No. 1 at ¶ 4. Ordinarily, an inmate has no recognized due process interest in his custodial classification. *Moody v. Baker*, 857 F.2d 256, 257-58. (5th Cir. 1988). Furthermore, solitary confinement—which is harsher than administrative segregation—is typically viewed as an ordinary, expected, and permissible incident of prison life. *See e.g.*, *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). The Supreme Court held in *Hewitt v. Helms*, 459 U.S. 460, 468 (1982), that the Constitution does not create a liberty interest to be free from prison administrative segregation, whether the purpose of the segregation is to protect the prisoner's safety, to protect others from that prisoner, to break up potentially disruptive groups of inmates or to await later classification or transfer:

> It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence…Accordingly, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.

*Id.*

The Due Process Clause standing alone confers no liberty interest for freedom from state action taken within the sentence imposed. *Sandin v. Conner*, 515 U.S. at 480 (citing *Hewitt*, 459 U.S. at 468). Additionally, prison officials should be accorded the

widest possible deference in classifying prisoners' custodial status as necessary to maintain security and preserve internal order. *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008).

Hernandez also alleges that he has been ineligible for parole due to his confinement in administrative segregation. ECF No. 1 at ¶¶ 109.  However, Texas law does not create a liberty interest in parole and, accordingly, Hernandez cannot state a claim under the Due Process Clause based on parole procedures. *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).  Because the Due Process Clause confers no liberty interest under any of the facts alleged by Hernandez, his Fourteenth Amendment claims must fail and should be dismissed.

### 2.  Hernandez has had adequate procedure and meaningful review as to his custodial classification.

Even assuming *arguendo* that Hernandez has raised a valid liberty interest, he still must show that he has not had adequate procedure in relation to this alleged interest for purposes of Fourteenth Amendment due process. *See Wilkinson v. Austin*, 545 U.S. 209, 224-28 (2005) (holding that the prison system provided adequate due process by providing informal, non-adversary procedure which included multiple levels or review).  Hernandez cannot show he has suffered inadequate procedure as to his classification.  Pursuant to Hernandez's own petition, his confinement in administrative segregation is a result of gang validation and he has been continuously offered a way of out administrative segregation by participation in GRAD. *See* ECF No. 39-2 at 4–6.

TDCJ's GRAD program is a constitutionally adequate procedure that offers meaningful review for prisoners like Hernandez who are in administrative segregation as a result of gang validation.   In fact, Hernandez's own pleadings acknowledge that once a prisoner is validated as a gang affiliate, he is entitled to periodic review of his validation and periodic review of the paperwork in his file. *See id.* at 16, ¶ 60. Hernandez's decision to repeatedly decline participation in the administrative segregation exit program does not illustrate a lack of adequate procedure for purposes of Fourteenth Amendment due process.  Because Hernandez cannot show he has suffered inadequate procedure as to his classification, he has no plausible claims based on Fourteenth Amendment due process violations, and these claims should be dismissed.

### D. Hernandez has no plausible Eighth Amendment claim as to his conditions of confinement.

Although the constitution "does not mandate comfortable prisons," conditions of confinement "must not involve the wanton and unnecessary infliction of pain." *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999).  The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care…" *Id.* at 352.  The Supreme Court has held that an inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the

minimal civilized measure of life's necessities.'" *Id*.  Second, "a prison official must have a 'sufficiently culpable state of mind.'" *Id*.

In prison conditions cases, that state of mind is one of deliberate indifference to inmate health or safety. *Id*.  "To establish deliberate indifference...the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Palmer*, 193 F.3d at 352 (*citing Bradley v. Puckett,* 157 F.3d 1022, 1025 (5th Cir. 1998)).

When it comes to the condition of a prisoner's cell, the Fifth Circuit has held that indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. *Encalade v. Stacks*, No. 9:04 CV 214, 2006 WL 1582468, at *8 (E.D. Tex. May 30, 2006) (citing *Wilson v. Lynaugh,* 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989)).

The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Encalade*, 2006 WL1582468, at *8 (citing *Rhodes v. Chapman,* 452 U.S. 337, 346-47 (1981)).  In compliance with the Supreme Court's opinion, the Fifth Circuit has stated that the Eighth Amendment does not afford protection against mere discomfort or inconvenience. *Wilson,* 878 F.2d at 849. "Only those deprivations denying 'the minimal civilized measure of life's necessities,'

are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Because Hernandez's conditions of confinement allegations, even if taken as true, do not constitute deprivations of the minimal civilized measure of life's necessities, his Eighth Amendment claims must fail and should be dismissed with prejudice.

### E. Hernandez's claims for compensatory and punitive damages must fail under the PLRA.

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *Taylor v. Milton*, 124 Fed. Appx. 248, 249 (5th Cir. 2005).  When there is no physical injury and only compensatory damages are sought, the claim for damages should be dismissed. *See e.g. Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 605–06 (5th Cir. 2008).  The Fifth Circuit has made clear that the physical injury required by §1997e(e) need not be significant but must be more than *de minimis. See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

In one short paragraph of his amended complaint, Hernandez only offers conclusory allegations that he has serious physical ailments and illnesses "caused or exacerbated: by his prolonged incarceration under harsh conditions in the SHU."  *See* ECF No. 39-2 at 10, ¶ 35. These conclusory statements do not satisfy even the *de minimis* physical injury requirement mandated by the PLRA.  Accordingly, Hernandez's claim for compensatory damages fail and should be dismissed in their entirety.  Furthermore, because Hernandez cannot show any underlying

constitutional violation by Defendants, his claims for punitive damages must also fail. *See Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 606 (5th Cir. 2008) ("[A] prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his *constitutional rights*." (emphasis added). Because Hernandez's alleged physical ailments do not meet the requirements for more than a *de minimis* injury under the PLRA, Defendant's motion to dismiss his compensatory and punitive damages claims should be granted.

## F. Hernandez's claims for monetary damages are also barred by qualified immunity.

Although qualified immunity is an affirmative defense, a Court may dismiss a claim at the pleading stage if the applicability of the defense is apparent from the face of the pleadings. *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994). Qualified immunity shields "government officials performing discretionary functions" from civil liability for claims under federal law "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity constitutes an '*immunity from suit* rather than a mere defense to liability.'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)). Accordingly, "[q]ualified immunity questions should be resolved 'at the earliest possible stage in litigation,'" usually before discovery. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009));

*see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citing cases in which this instruction has been given). Resolving the applicability of qualified immunity as early as possible serves to protect officials not only from unwarranted liability but also from "costly, time-consuming, and intrusive" pre-trial discovery. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

As explained above, Hernandez has failed to state a claim that Defendants violated any of his constitutional rights. Therefore, Defendants are entitled to qualified immunity and Hernandez's claims against them should be dismissed.

## IV.
## CONCLUSION

For all the foregoing reasons, Defendants Collier, Harris, and Grant respectfully request that this Court grant their motion and dismiss all of Plaintiff Jason Hernandez's claims against them with prejudice.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINAIRE**
Chief, Law Enforcement Defense Division

/s/ Amy L. Prasad
**AMY L. PRASAD**
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24037295
Amy.Prasad@oag.texas.gov

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Office (512) 463-2080
Fax (512) 370-9401

**ATTORNEYS FOR DEFENDANTS
COLLIER, HARRIS, AND GRANT**

## NOTICE OF ELECTRONIC FILING

I, **AMY L. PRASAD**, Assistant Attorney General of Texas, do hereby certify

that I have electronically submitted for filing a true copy of the above in accordance

with the Electronic Case Files System of the Eastern District of Texas Lufkin Division

on August 9, 2019.

/s/ Amy L. Prasad
**AMY L. PRASAD**
Assistant Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I, **AMY L. PRASAD**, Assistant Attorney General of Texas, certify that a true

copy of the above has been served by placing it in United States mail, postage prepaid,

on August 9, 2019, addressed to:

**Jason J. Hernandez, TDCJ No. 1655115**
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351
***Plaintiff Pro Se***

/s/ Amy L. Prasad
**AMY L. PRASAD**
Assistant Attorney General